# COURT OF APPEALS OF TEXAS.

## GALVESTON TERM, 1879.

---

### Antonio Garcia v. The State.

1. Petit Jurors. — Section 26 of the jury law of 1876 makes it cause for challenge that a petit juror had "served for one week in the District Court within six months preceding, or in the County Court within three months preceding." *Held*, that the word *preceding* has reference to a prior term of court, and that a previous week's jury-service during the pending term is not cause for challenge.

2. New Trial. — Though improper to consider and overrule a defendant's motion for a new trial when he is not present in court, such action may be corrected by setting it aside, and, when the defendant is present in court again considering and determining the motion.

Appeal from the District Court of Nueces. Tried below before the Hon. J. C. Russell.

The indictment was for the murder of Augustine Anallo, in Nueces County, on September 7, 1878.

The jury found the appellant guilty of murder in the first degree. The testimony, though brief, was to the purpose, and consistent in all material respects.

Juan Ariano testified, for the State, that himself and appellant resided on the ranch of R. Johnson, in Nueces County, being employed by the said Johnson in the capacity of shepherds. The deceased came to the ranch on Thursday, to see his children, as he stated, and, having obtained the consent of appellant, remained overnight. On the day following, after supper, the appellant and deceased, at the instance of appellant, walked away from the house together. Shortly, appellant returned alone, and on being asked where

the deceased was, answered that he (appellant) had struck him (deceased) some blows, and that deceased was out at the sheep-pens.

Thereupon, Johnson told witness and appellant to go out and find deceased. Accordingly, they started; and after they had gone a short distance, appellant said to witness, "If I have not already killed him, I have a knife with which I can finish him." Witness took the appellant back to the house, and told Johnson what he had said; and Johnson took the knife from appellant, and then witness and appellant proceeded to the pens where deceased was, some three hundred yards from Johnson's house. They found him lying on the ground. Appellant took hold of deceased's hand, and, after feeling for his pulse, threw it aside and said, "The devil has got him."

Witness examined deceased, and found him quite dead. A blow from some blunt instrument had crushed in the skull. Witness then found an axe lying near, with blood on the helve, or handle. When witness went back and told Johnson, he (Johnson) tied the appellant. Appellant gave no reason why he struck deceased. Before leaving the house together, the deceased and appellant seemed very friendly, talking together, and eating at the same table together.

Testifying for the State, Feliciano Garcia stated, in the main, what was stated by the last witness, except that he (witness) accompanied the last witness and appellant when they went to hunt for deceased, as directed by Johnson. Saw appellant examining deceased, but did not hear him say "He has gone to hell," nor did he previously hear appellant say that if deceased was not dead he would finish him.

For the State, Manuella Ariano testified that she had formerly lived with deceased, and had several children by him. Witness had left deceased some time ago, taking her chil-

dren, and for more than two months had been living with appellant. Was not married to deceased nor to appellant. Deceased stayed all night at the Johnson ranch, the night before he was killed, but witness did not speak to him. Witness slept with appellant that night.

R. Johnson, for the State, corroborates the testimony of the first two witnesses, and adds, that when he tied the appellant he told him that he (witness) could either shoot or hang him (appellant), as he (witness) pleased.

*E. A. Atlee*, for the appellant.

*W. B. Dunham*, Assistant Attorney-General, for the State.

WHITE, J. The appeal in this case is from a judgment of conviction in the lower court for murder in the first degree, with the death penalty assessed.

During the trial, but two bills of exception were saved to the rulings of the court, viz.: first, with regard to the refusal of the court to sustain a challenge for cause to one of the jurors; and, second, with reference to the action of the court on the hearing of defendant's motion for a new trial.

It seems, as stated in the first bill, that on testing one of the jurors, as to his qualifications, he was challenged by defendant, upon the ground that he, the juror, had served as a juror in the District Court for one week within six months preceding. This challenge the court refused to allow, for the reason that the one week's service as rendered by the juror had been rendered at the then present term of court, and that the statutory rule invoked did not apply. Amongst the other causes of disqualification enumerated, " the fact that he has served for one week in the District Court within six months preceding," it is declared, " shall

be a good cause for challenge " to a juror. Acts 1876, p. 83, sec. 26. Evidently the word " preceding," used in the statute, means service rendered at a term prior to and other than the one then being held. *Welsh* v. *The State*, *3* Texas Ct. App. 413.

To our minds this becomes clearly apparent when this section is considered in connection with other sections of the same act. In the eleventh section it is provided that " the court may discharge the regular panel of a jury after they shall have served one week ; and any deficit in a panel shall be made up, when a selected juryman is excused, or fails from any cause to attend on the day specified in the summons, from the original list returned by the jury commissioners, in the order in which their names are recorded in the said list." Acts 1876, p. 80. Here we see that though a juror may have served for one week, and been discharged, yet he is liable to be called again when it becomes necessary to resort to the original list to supply a deficit in the subsequent panel. To hold that one week's service at the same term would disqualify, might be to nullify entirely the latter clause of this eleventh section.

But again : in our opinion, there can be no question of the correctness of the ruling of the court in this instance, when we consider the plain import of the language used in the twenty-third section of the same act. That section provides that, " whenever a *special venire* shall be ordered, *the names of all the persons selected by the jury commissioners to do service for the term* at which *such venire is required* shall be placed upon tickets of similar size and color of paper, and the tickets be placed in a box, which shall be well shaken up ; and from this box the clerk, in the presence of the judge, in open court, shall draw the number of names required for said *special venire*, and the names of the persons so drawn shall be attached to the writ of special *venire facias*, and the persons named shall be summoned by

the sheriff," etc.    Acts 1876, pp. 82, 83.    To hold that one week's service at the same term would *ipso facto* disqualify a juror from further service at the same term, might operate a nullification entirely of this provision of the statute concerning special *venires*.

The case at bar was one requiring, and the juror proposed to be challenged belonged to, a special *venire*.    Were there any doubt as to the meaning of the word "preceding," as used in the twenty-sixth section, we would feel not only authorized, but compelled, to give the construction we have placed upon it, in order to make it harmonize with other sections of the same act, not liable to doubtful interpretation.

As to the point made and presented in the second bill of exceptions, it is only necessary that we should refer to cases heretofore decided by this court where the identical question has been determined.    When the attention of the court was called to the fact that defendant was not present in court at the time his notice for a new trial was considered and acted upon, the court promptly ordered that defendant be brought again into court, and then in his presence, setting aside the order overruling it, offered his counsel an opportunity to reargue the motion for a new trial, which was declined.    As was said by Judge Dillon, in *The State* v. *Decklotts*, 19 Iowa, 447, "the error, if any, was cured by an offer of the court to permit defendant to file and argue his motion for a new trial anew, which he declined."    *Gibson* v. *The State*, 3 Texas Ct. App. 437 ; *Krautz* v. *The State*, 4 Texas Ct. App. 534 ; *Sweat* v. *The State*, 4 Texas Ct. App. 617 ; *Berkley* v. *The State*, 4 Texas Ct. App. 122.

The charge of the court and the sufficiency of the evidence are both complained of in the motion for a new trial, and are also earnestly discussed in the printed brief filed here by the counsel appointed in the lower court to repre-

sent the defendant. Counsel has performed his duty well; but this court cannot agree with his conclusions in regard to the supposed errors complained of.

The charge of the court, it is true, is very concise, but it presents, we believe, fully the law applicable to the facts of the case, and no additional instructions were asked for the defendant.

There is little, if any, conflict in the material portions of the evidence as exhibited in the record. So far as we can perceive, no murder was ever committed with less provocation, or under more heartless circumstances. The deceased, one Augustine Anallo, had cohabited for several years with a woman, by whom he had several children. Defendant induced the woman to quit deceased and live with him. He carried her and the children of deceased to Johnson's ranch, where he was engaged as a shepherd, and had been living with her two months prior to the homicide. Deceased went to the ranch to see his children, and applied to and obtained defendant's permission and consent to stay all night at his house with them. The woman testified that "she had no conversation with deceased on his visit to the ranch, on Thursday night, and that defendant stayed there, too; that she slept with defendant." The deceased remained at the ranch the next day, and told Johnson, who inquired about it, that he had seen defendant, and that they had settled their differences about the woman. Johnson then proposed to hire deceased for a few days to aid him in shearing sheep. This was on Friday evening. That night, deceased, defendant, Johnson, and the woman all ate supper together, defendant and deceased conversing and seeming friendly. After supper, defendant invited deceased to take a walk with him. They had not been absent long when defendant returned alone to the house. Johnson asked defendant where the other man was. "He replied that he

had struck him (deceased) some blows with a club, and that he was out there." Johnson ordered some parties who were present to go with defendant and find deceased, and bring him to the house. These parties found deceased about 300 yards off, near the sheep-pens. He was dead, his skull having been crushed by a blow from an axe which was found lying near by, with blood upon the helve, or handle.

Defendant made no statement attempting to explain, justify, or excuse the act; but, when brought back to the house, told Johnson that he, "Johnson, might do what he pleased with him, — either shoot him or hang him."

We cannot see how the jury could reasonably have found a different verdict from the one here rendered against defendant. His trial has been a fair and legal one; and believing that justice, as well as the law, demands that the judgment of the lower court should be carried into execution, it only remains for this court to declare that the judgment is in all things affirmed.

*Affirmed.*